ural History, 183295. Good morning, Stephen Bergstein for the Plaintiff Appellant. Plaintiff makes out a prima facie case on two counts of retaliation. The jury should resolve why defendant rescinded plaintiff's job offer only a few weeks after plaintiff objected to his supervisor's sexual harassment, and second, the jury should determine whether the defendant is guilty or not. The jury should determine what motivated defendant to terminate plaintiff outright. Am I right that essentially your theory has to be a kind of cat's paw theory that it was Tran who somehow persuaded the decision makers to rescind the offer? That's a huge part of the argument. Because Tran is the only one that there's any evidence new of this oppositional activity, right? Correct. And under this Court's cases and thicker staff, you know, a discriminatory link in the chain can satisfy the prima facie standard. So what is the evidence, if any, that Tran communicated in some way that to the decision makers, who I guess are Montez and Devine? Montez. Montez with respect to getting the employment contract that he was hoping to get, and Devine with respect to terminating his consultancy. What is the evidence that Tran influenced their thinking in any way, let alone by persuading, telling them about the oppositional activity? First of all, Montez is the one who made the decision to terminate the contract at the end of the sequence of events. But here's the evidence that Montez knew. Montez was on Plaintiff's side when they created this position, and there was a concern about a discrepancy, and Montez said... It was Tran. Right. But Montez said, I want this guy, and I can overlook it because we like him and we know him. That was August 19. Montez has an abrupt about-face after a conversation with Tran, so much that Montez immediately changes his mind, conveys that to Young, and says, I'm not on Ahmed's side anymore. And that's the beginning of the end for the Plaintiff. So we only have two parties to that conversation, Tran and Montez. But I think you can draw the inference that they talked about the Plaintiff's objection to the sexual harassment, because what else explains Montez's about-face? Do you agree that that would be the thing we would have to infer? That is, suppose Tran said, you know, I think Young has a good point, and Tran was motivated to say that because he was offended by Mr. Ahmed's oppositional activity expressed to Tran. But he never says that to Montez. Montez is considering his conversation with Young. Should I stand by what I said? Or maybe she has a point. And Tran says, yeah, I think she was right, that if he lacks credibility, he should be fired. And that's not really what Tran thinks. But he says that to Montez. And Montez is persuaded, yeah, you know, I think you're right, Young was probably right, and goes back, still without knowing anything about the oppositional activity, and tells Young, I agree with you now. If Tran said anything to Montez that was negative, the jury can draw the inference that it was because Plaintiff had objected to Tran's sex harassment. But you're not even talking really about the jury at this point. You're just talking about a prima facie case. Correct. Well, the fact finder can draw the inference, and we have a de minimis standard on the prima facie case, right? And so you have a very tight sequence of events about one month when everything happens. Yes, but you're not disputing that even if you have a prima facie case, that the employer not only asserts but has legitimate reasons to take adverse action against Ahmed. So really what we're talking about is the pretext finding. Well, we have pretext, too. The district court didn't address pretext, but we have pretext. What's the evidence of discrimination? In addition to the cat's paw or the bricker staff influence, you have disparate treatment. You have other candidates, other people working for the museum who also had discrepancies, and they were not denied their positions. Plaintiff was, even though Young told the plaintiff on September, early September, you get a letter from Long Island University that says you have enough credits to graduate. You'll be okay. Ahmed did that. He comes back and says, here's my letter, and Young, according to Ahmed, says, okay, you're clear, you're okay. He still doesn't get the job. He still gets fired. So the discrepancy falls away based on the plaintiff's testimony about what happened when he followed through on Young's direction. And this is why we have trials. They deny it. I know they deny it, but the plaintiff's testimony, his affidavit, makes clear the sequence of events. He was in line for the position. You're saying a reasonable jury could infer that Young, too, acted as she did given that she changed her position, according to Ahmed, that that would be enough to say that she also was objecting to, was motivated in part by the fact that Ahmed told Schrand to stop being so handsy in a bar. Montez is the one who rescinded the contract. Ultimately, that's two separate. Yes, but you're saying Young changed her position. That's what you just told me, is that the problem is that Young, we can draw an adverse inference from the fact that Young originally said, oh, just get the credits, but later changed her position. Well, it was Montez who made the, I mean, whatever was going through Young's mind when she changed her mind, in the end it was Montez who pulled the plug, and that was the end of plaintiff's career with the museum. So this sequence of events, there's all sorts of fact issues about everything they claim happened, whether you're talking about a prima facie case, whether you're talking about pretext. There's a lot here. The record is huge. There's a lot here about what people said, what people intended. But it ultimately boils down to that phone call. And I think, you know, since the plaintiff was not a party to that call, you can still draw the inference that Schrand infected the process, because why else would Montez change his mind so quickly when he was clearly on plaintiff's side and they created the position for the plaintiff not too long before that? Thank you. May it please the Court, my name is Evie Gobadia, and I represent the American Museum of Natural History in Samuel's Trion. Plaintiff's entire case is based on an unsupported inference. He is asking this Court to ignore the undisputed evidence and instead make inferences that have no basis whatsoever. The district court properly held that speculation is not enough. The district court also properly held that undisputed intervening events rebut any inference of causation. Here, there is no dispute that the museum's job offer was conditional on passing a background check. There is no dispute that having a bachelor's degree was one of the requirements of the position. There is also no dispute that plaintiff misrepresented his background, never received a degree, and failed the background check. Can you tell me what is the record evidence about other people who made misrepresentations? My impression was that your position is that there are lots of people who are similarly situated who were turned down. But I take it Mr. Bergstein is saying there is also evidence that some people, that exceptions were made at any rate to the general policy. Is he correct about that? No, he is not correct, Your Honor. The record 455, there is an e-mail from Latoya Young, H.R. And in that e-mail, it's 455 and 456. I believe it's on 456 when she makes a statement that we have never moved forward with an offer to a candidate who we believe to have made any false statements. When the museum has a reason to believe that a candidate willfully made a false statement, they don't move forward. So there are examples of other candidates who there are discrepancies. They talk to them about it. Errors, but they're not willful or in bad faith. That is correct. For example, someone walked in their graduation, so they put they graduated in May, but they actually didn't get a diploma until September. That type of discrepancy. Here, plaintiff never received a degree. H.R. even reached out to the university, LIU. Plaintiff alleged that he received an associate's degree in computer science. And LIU confirmed that they have never awarded an associate's degree in computer science. Despite all of these undisputed facts, plaintiff is asking the court to ignore this and still find that there's an inference of causation where one does not exist. To prevail here, this court has said a plaintiff must produce evidence that the adverse action would not have occurred in the absence of a retaliatory motive. Instead of pointing to any evidence because he cannot, plaintiff infers that Mr. Tran must have somehow manipulated the museum. This inference is solely based on alleged conversation between Mr. Tran and Mr. Montes that plaintiff admits he wasn't a party to, and he doesn't point to any evidence regarding what the conversation was about. Plaintiff alleges that this creates a dispute, a fact. It doesn't. There's no dispute here. We would have to assume that a reasonable jury would infer the contents of this conversation without any evidence supporting that Mr. Tran said anything negative about plaintiff. Then Mr. Montes would have had to solely and negligently rely on any purported negative information he received from Mr. Tran to base his — and that would have been the basis of his decision to rescind plaintiff's offer. Earlier, you heard plaintiff said all this happened on August 19th, Montes was for plaintiff. What else could have caused Montes to suddenly about-face if it wasn't a conversation he had with Tran? What plaintiff fails to point out is that if you look at the record on 82, there is an e-mail that plaintiff says to Montes, and in that e-mail, plaintiff admits, I received the transcript, approximately 113 of 134 credits. So this is further evidence that plaintiff is even admitting that he doesn't have the credits for the degree. And that also happened on August 19th. And that is an independent reason that Montes decided to change his mind, that he decided to agree with Young that plaintiff was incredible. The cat's paw theory that plaintiff is advancing does not explain H.R. H.R. never had a conversation with Tran, and plaintiff doesn't allege that they did. H.R. independently reached out to the university, and based on that conversation, based on the background check, and based on H.R.'s conversation with Ahmed, stated in the e-mail that I don't find Mr. Ahmed to be credible. And in those situations, the museum doesn't move forward with candidates. There's just simply no way that plaintiff can get around the discrepancies in his educational background. Plaintiff has failed to establish causation. With no causation, there's no prima facie case of retaliation. The museum's decision to rescind the job offer was a legitimate, non-retaliatory, and non-discriminatory reason. There can be no debate that saying honesty is needed for a job. Plaintiff can't even establish that H.R. or Montes had any retaliatory intent. Is there anything beyond your brief, anything more that you need to say? The only thing left is really that all we have here is speculation. And I think one thing that's really key here is so we have two issues. We have that the offer was rescinded, and we also have that the contract was terminated. There's a 17-day gap between these two. So what plaintiff is asking the Court to believe is that the offer was rescinded for retaliatory motives, but they still allowed him to work there for 17 more days, and they then terminated his contract for the same retaliatory motives 17 days later. That's just not reasonable. A jury would not infer that. And for those reasons, if Your Honors don't have any questions, we respectfully request that you affirm the district court's well-reasoned opinion. Thank you. What we just heard was a very concise summation emphasizing the employer's position in this case, but there are disputes everywhere. I just heard there's no dispute that a bachelor degree is a prerequisite. There is a dispute, because when plaintiff came in with the September 6th letter that said he had enough credits, she said this is fine, you're cool, language to that effect. So they were willing to overlook it. So whatever they have as a paper credential, Young from HR accepted what LIU had to say about plaintiff's educational background. Exceptions to the general policy. Our brief, page 8 and 9, has five examples of people who had comparable discrepancies. Again, summary judgment, they're similarly situated. The question is, well, their errors were not willful, they were mistaken, and it wasn't intentional. How do you distinguish between a willful mistake and a negligent mistake or a good-faith mistake on a summary judgment motion, especially when plaintiff did everything he could to go back to the school to find out what happened. He did what Young told him to do, and he came back with the letter that Young wanted him to have. So when we hear there's no way to get around the discrepancies, there is a way to get around the discrepancies. Young was willing to overlook the discrepancies. Page 267, quote, she said it was sufficient that you had the requirements, but not necessarily the degree. Answer, yes, that's exactly correct. We're talking about Young here. Quote, if she told me to provide the associates, I would have paid the bill and provided the associates. The only reason he didn't have the associates. Is there any dispute that whatever Young said to Ahmed, that she told Montes that she would not approve the hire before the conversation that you're inferring took place between Tran and Montes? Is that a disputed fact as to whether Young changed her mind? Well, early on, when they first had the discrepancy, Young had not ruled out hiring plaintiffs. Right, but we were before talking about inferring that Tran influenced Montes in the interval between the conversation between Montes, the first and second conversation between Montes and Young. So what accounts for Young changing her mind, if that's what happened, between what she, we'll assume because in the light most favorable to Ahmed, that she told Ahmed, okay, that's cool, and what she said to Montes later on. Is that something that there's a dispute about, whether she actually told Montes in conversation one, listen, we don't want to go forward with this, when Montes was still standing up for Ahmed? Well, then Montes turned against Ahmed after his conversation with Tran. So the discrepancy about Young, I mean, I'm not sure how that matters. If she changed her mind, she changed her mind. Is there any indication that Tran had some interaction with Young before the conversation with Montes, where Montes turns around? No, we're not aware of any conversation with Young, but there's something very irregular about this process, is my point. Again, de minimis standard, once plaintiff subjects to the harassment, everything falls apart for him, and he does what they want, and he still doesn't get it. Other people had similar discrepancies. Montes has this about face that nobody seems to be able to explain, although there is an inference to be drawn, and Young, apparently, on behalf of HR, the jury could assume that she is speaking on behalf of the museum about what they're willing to accept if there's a candidate that they want, and it's still not good enough. So what's going on here? And then we know that Montes, at the very end, when he's fired, plaintiff sends an e-mail, you know, what's going on? I did everything you want.  Montes is cc'd on the e-mail. He comes running out of his office two seconds after the plaintiff hits send, yelling at the plaintiff. What's that about? So and then they decide, well, the plaintiff is a hothead and he can't work here because he has access to computer technology, which he really doesn't, according to his testimony. So there's so many fact issues here about the irregularity of what happened that to make out a prima facie case, there's enough here. Thank you very much.  That's our decision.